UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY E. HOBSON, | |
| Plaintiff, | |
| -against- | |
| DANIEL F. MARTUSCELLO III, DOCCS Acting Commissioner; CAROL MOORES, M.D., Deputy Commissioner (Chief Medical Officer); MARK MILLER, Green Haven Correctional Facility Superintendent; N.S. MULLAY, Nurse Administrator; DR. STILLMAN, Medical Director; DR. AKHTER; NURSE JOHN OR JANE DOE ("on call" overnight 11/11/23 – 11/12/23); DANIELLE DILL, Psy. D., Executive Director, CNYPC; C. GLEASON, | 24-CV-5029 (LTS) ORDER TO AMEND |
| Defendants. | |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is currently incarcerated at Green Haven Correctional Facility ("Green Haven"), brings this action *pro se*. Plaintiff asserts claims, under 42 U.S.C. § 1983, about multiple issues at Green Haven that have arisen since his transfer there. By order dated July 22, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis*, that is, without prepayment of fees.[1] For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within 60 days of the date of this order.

**STANDARD OF REVIEW**

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a

---

[1] Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(b)(1).

governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

## BACKGROUND

The following allegations are drawn from Plaintiff's complaint. When Plaintiff was at Clinton Correctional Facility ("Clinton"), he requested a transfer, and on October 31, 2023, he was transferred to Green Haven. (ECF 1 at 7.) At Clinton, incarcerated individuals were allowed to have their own television sets, and Plaintiff had paid approximately $158.00 for his television set. Green Haven does not allow personal television sets, and when Plaintiff was abruptly transferred, his options were to mail the television set to someone outside the facility at his own expense or "forfeit" it.

Upon arrival at Green Haven, Plaintiff met with a medical provider and within "24 hours, [he] received his maintenance medical medications." (*Id.* at 13.) However, three weeks passed before Plaintiff received unspecified mental health prescriptions, including a "sleep aid." (*Id.*) At some point, Plaintiff sent letters to Nurse Administrator N.S. Mullaly and Medical Director Stillman, presumably about this delay. As a result of not having this medication, Plaintiff suffered three panic attacks. (*Id.*) The worst attack was on the night of November 11, 2023. Plaintiff had "labored breathing" and "feelings of suffocation." (*Id.*) Plaintiff informed the "A" officer on duty, who called "Nurse Jane Doe." Jane Doe informed Plaintiff that his medical records reflected that Plaintiff had allergies and Doe stated that the allergies were "probably the cause" of the delay.  (*Id.* at 12.)

On an unspecified date, Plaintiff "filed grievances and appeals to [Green Haven's] OMH Unit Chief," C. Gleason, and sent these to Danielle Dill, who is the Executive Director of the Central New York Psychiatric Center (CNYPC). (*Id.* at 13.) Plaintiff also sent "multiple correspondence" to Dr. Carol Moores, but she minimized his complaints and referred him back to Green Haven staff. (*Id.* at 14.) Plaintiff contends that this three-week delay in receiving his mental health prescription and sleep aid violated his Eighth Amendment rights, and he seeks damages.

At Clinton, Plaintiff had been prescribed a muscle relaxer (Naproxen) for pain, and an allergy medication. Since his arrival at Green Haven, Plaintiff has "suffered [a] sinus allergy, cold/flu congestion, back/neck/ shoulder/hip spasms, [and] hearing loss due to fluid/wax build-up and ear canal pressure." (*Id.* at 11.) Plaintiff reported his "spasm condition" to Dr. Akhter, explaining that it was the result of a fall and past sports injuries. (*Id.* at 15.) Without "any examination," Dr. Akhter stated that Plaintiff looked too "young," to be experiencing spasms. Dr. Akhter looked "quickly" in Plaintiff's ear and stated that he saw "no infection," and declined to do an "ear flush," which was a treatment that Plaintiff had received at Clinton. Dr. Akhter stated that Green Haven did not have such equipment but that Plaintiff "would be alright." (*Id.*) Dr. Akhter "begrudgingly" provided nasal spray after Plaintiff "demanded it." (*Id.*) Plaintiff has not received the muscle relaxer or an ear flush. He states that he now has "swelling around [his] ear." (*Id.* at 11.)

Plaintiff also describes numerous other issues that he has encountered at Green Haven. He asserts that there is "gang and affiliated group control of telephones in the 'recreation yard' and in the 'housing unit' areas" that has affected his ability to make calls. (*Id.*) Moreover, "due to the organizational disarray" at Green Haven, officers are frequently late to escort prisoners to

programs or simply skip doing so. (*Id.* at 11-12.) On January 26, 2024, Plaintiff missed his legal phone call because the B-block housing officer was late. (*Id.* at 11.) Plaintiff also missed congregate religious services on Easter and, on unspecified dates, missed therapy appointments. (*Id.* at 11-12.)

Plaintiff asserts that he has "been in a constant state of loss of property" at Green Haven. He paid for a special lasagna meal that was offered through an affiliation group for prisoners, but his meal was never delivered. In addition, six of the eight bags of peanuts were missing from a package sent by mail from his family. Plaintiff contends that there are consistent mail delays, and mail is not delivered within the periods established by DOCCS's directives or minimum standards. (*Id.* at 12.)

Plaintiff sues Green Haven medical staff (Doctors Akhter and Stillman, Nurse Administrator N.S. Mullaly and Nurse Jane Doe ("on call" overnight 11/11/23 – 11/12/23), and Green Haven's OMH Director C. Gleason).  He also names Green Haven's Superintendent, Mark Miller; DOCCS Acting Commissioner Daniel F. Martuscello III. DOCCS Deputy Commissioner Carole Moores, M.D., and Central New York Psychiatric Center Director Danielle Dill.

Plaintiff seeks money damages and declaratory relief for his claims, which can be summarized as (1) property loss (television, lasagna meal, missing packs of nuts); (2) First Amendment claims related to telephone and mail; (3) denial of programming due to lack of escorts; and (4) delay and denial of medical care (delay for psychiatric medication and response to panic attack; denial of Naproxen and "ear flush"). Plaintiff also seeks an order directing that he be transferred out of Green Haven.

**DISCUSSION**

A.    **Property Loss**

The Due Process Clause of the Fourteenth Amendment protects "against deprivations [of life, liberty, or property] without due process of law." *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 464 (2d Cir. 2006) (internal quotation marks and citation omitted). In a suit under Section 1983 to enforce procedural due process rights, a court must determine whether a property interest is implicated and, if so, what process is due before the plaintiff may be deprived of that interest. *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011). "The fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (internal quotation marks and citations omitted).

Where a plaintiff is deprived of property due to a government employee's random and unauthorized act, the government cannot predict precisely when the loss will occur, and it would be impossible to provide a meaningful hearing before the deprivation of property. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1986). In such cases, the availability of an adequate post-deprivation remedy precludes any claim that a plaintiff was denied procedural due process. *Id.*

Here, Plaintiff states that he has been "in a constant state of loss of property" (ECF 1 at 12), and he makes three specific claims: (1) six bags of salted peanuts ($1.45 each) were missing from his package on December 19, 2023 (2) denial of a lasagna meal on November 28, 2023, for which he had paid $10 to a prisoner group; and (3) "forfeiture" of his television set upon transfer from Clinton. (*Id.*) The first two claims involve "random and unauthorized" acts that could not be predicted, and due process therefore entitles Plaintiff only to an adequate post-deprivation

remedy. *See Hudson*, 468 U.S. at 533.[2] "[T]he availability of an action in the Court of Claims provides [an] adequate post-deprivation remedy for prisoners who claim deprivation of personal property by prison officials." *Jones v. Harris*, 665 F. Supp. 2d 384, 401 (S.D.N.Y. 2009) (describing procedure available to state prisoners); *Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 499 (S.D.N.Y. 2014) (identifying that New York state law provides pretrial detainees with an adequate post-deprivation remedy, that is, Section 9 of the Court of Claims Act). These allegations therefore fail to state a federal claim on which relief can be granted.

As to Plaintiff's claim about his television set, Plaintiff does not plausibly allege that he was illegally deprived of his property. Plaintiff states that he was advised that he "was not heading to a facility that permitted television sets, so he would have to mail the TV home at cost [or] forfeit it." (*Id*. at 17.) Plaintiff contends that "[t]he option to mail the TV home is pointless as the DOCCS mailing directive will not allow the TV to be mailed back to the incarcerated [person] should they later be transferred to a TV jail." (*Id*. at 18.) Plaintiff argues that there was a "forced forfeit" and that when he grieved the issue, he "was told to file a claim." (*Id*.) Plaintiff has not sufficiently alleged that any state actor deprived him of his property; rather, Plaintiff decided it would not make sense to send his television home. Moreover, even assuming that this could be considered a "forced forfeit" due to the timing of the transfer, Plaintiff had the opportunity to bring a claim for compensation after his transfer. These allegations therefore also fail to state a claim on which relief can be granted under Section 1983 for a violation of

---

[2] Plaintiff seems to allege that a prisoner group within the facility was offering the special meal and failed to provide it. Thus, in addition to the fact that the allegations do not state a due process claim, there also appears to be a question about who caused the deprivation: a correction officer or other state actor, or a private individual or group that is not subject to suit under Section 1983.

Plaintiff's right to procedural due process, and the claims are dismissed. 28 U.S.C.

§ 1915(e)(2)(B)(ii).

**B.    First Amendment Claims**

    1.    Mail

The First Amendment protects prisoners' rights to "adequate, effective and meaningful"

access to the courts and to the free flow of incoming and outgoing mail. *Bounds v. Smith*, 430

U.S. 817, 822 (1977), *abrogated on other grounds*, *Lewis v. Casey*, 518 U.S. 343 (1996).

"[C]ourts have consistently afforded greater protection to legal mail than to non-legal mail, as

well as greater protection to outgoing mail than to incoming mail." *Davis v. Goord*, 320 F.3d 346,

351 (2d Cir. 2003) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989)). To state a First

Amendment claim based on mail tampering, a prisoner must allege either (1) "an ongoing

practice of censorship unjustified by a substantial government interest," or (2) that "the

tampering unjustifiably chilled the prisoner's right of access to the courts . . . ." *Davis*, 320 F.3d

at 351. Although "an isolated incident of mail tampering is usually insufficient to establish a

constitutional violation,"  even two incidents of mail tampering may constitute a First

Amendment violation if these suggest an ongoing practice of censorship. *Id.*

    To state a claim for denial of access to the courts due to interference with legal mail, a

plaintiff must allege that the defendant "took or was responsible for actions that hindered [a

plaintiff's] efforts to pursue a legal claim." *Id*. To demonstrate actual injury, a plaintiff must

allege: (1) a valid underlying cause of action separate from the right-of-access claim; and

(2) frustration or hindrance of the litigation caused by the defendant's actions. *See Harbury*, 536

U.S. at 415. A mere "delay in being able to work on one's legal action or communicate with the

courts does not rise to the level of a constitutional violation." *Jermosen v. Coughlin*, 877 F. Supp.

864, 871 (S.D.N.Y. 1995) (citation omitted).

Here, Plaintiff alleges that officers at Green Haven "consistently fai[l] to deliver packages to incarcerated within the 72 hours their own directive (4911) prescribes often doubling and tripling it." (ECF 1 at 12.) In addition to delays with packages, there are delays with other mail "of 2 to 3 weeks . . . ." (*Id.*) Plaintiff cites this as an example of Green Haven's "failure to meet even minimum standards." (*Id.*)  Plaintiff makes no allegation of either ongoing unjustified censorship or of hindrance of a particular legal claim. These allegations of mail delays are therefore insufficient to state a claim under Section 1983 for a violation of Plaintiff's constitutional rights.

Moreover, to state a claim under Section 1983, a plaintiff must allege that a state actor violated a right secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Plaintiff's allegation that Defendants failed to meet the mail delivery timelines set forth in the New York State DOCCS Directive 4911 does not state a claim for a violation of Plaintiff's constitutional rights. *See Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) (the "failure to follow a [DOCCS] Directive or prison regulation does not give rise to a federal constitutional claim"). The Court therefore dismisses Plaintiff's Section 1983 claims that are based on the handling of his packages and mail for failure to state a claim on which relief can be granted.

2.    Telephone calls

Incarcerated individuals maintain a First Amendment right to intimate association, but it may be limited to be consistent with the nature of incarceration. *See Overton v. Bazzetta*, 539 U.S. 126, 130, 131 (2003).  Prisoners do not have a right to unlimited access to telephones. *Harrison v. SecurusTech.net*, No. 13-CV-4496, 2014 WL 737830, at *4 (E.D.N.Y. 2014) (citing *Bellamy v. McMickens*, 692 F. Supp. 205, 214 (S.D.N.Y. 1988)). Moreover, restrictions on prisoners' use of telephones have been upheld where they have access to alternative means of

communicating with the outside world, even if those alternative means are not ideal. *Holloway*, 666 F.3d at 1080 (citing *Overton*, 539 U.S. at 135); *Al-Haj v. Singer*, No. 19-CV-3135 (LJL), 2021 WL 4442854, at *4 (S.D.N.Y. Sept. 28, 2021) ("Phone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world, and particularly with counsel.").

Plaintiff makes two claims about the denial of telephone access: (1) he was denied access to a legal telephone call on January 26, 2024, because the escorting officer was late; and (2) security risk groups (referred to in Plaintiff's complaint as "gangs") control the telephones in the recreation area and housing area, and this has deprived Plaintiff of use of the phone. (ECF 1 at 11.)

Plaintiff's allegation that he missed one phone call with counsel is insufficient to state a claim that he was deprived of his right adequately to pursue his legal claims. "[A] well-pleaded Section 1983 claim based on lack of telephone access would require an allegation that the inmate was 'stripped of alternate means of communication.'" *Al-Haj*, 2021 WL 4442854, at *4. Absent such allegations, there has been no sufficient claim stated of a constitutional violation or a constitutional injury. *Bellamy*, 692 F. Supp. at 214 (holding that "restrictions on inmates' access to counsel via the telephone may be permitted as long as prisoners have some manner of access to counsel").

For the same reason, allegations that other prisoners impeded Plaintiff's access to phones in the recreation area are insufficient to allege a violation of his constitutional rights because Plaintiff has not alleged that he lacked alternate means of communication.[3] Plaintiff's allegations

---

[3] Plaintiff has also not alleged facts suggesting that the groups posed a risk of serious harm to him that was met with indifference on the part of any defendant.

regarding phone limitations are therefore insufficient to state a Section 1983 claim for a violation of his First Amendment rights.

## C.    Denial of religious services

Plaintiff alleges that because escorting officers were late or unavailable, he was "periodically denied basic rights and services such as . . . religious services" (ECF 1 at 7), including once on Easter Sunday (*id.* at 12). Plaintiff attributes the ongoing problems at Green Haven to "gross mismanagement and lack of control" (*id.* at 9), and "organizational disarray" (*id.* at 11).

To establish a defendant's liability in a suit brought under Section 1983, "a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, a plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 566 U.S. at 676). Plaintiff does not identify the defendant against whom his claim for damages for the denial of religious services is asserted or plead facts showing the personal involvement of any defendant named in the complaint in denying him the right to free exercise of religion.[4]

Moreover, because Section 1983 does not include a state-of-mind requirement, this requirement depends on the underlying constitutional right at stake. *Wiggins v. Griffin*, 86 F.4th 987, 997 (2d Cir. 2023) (citing *Daniels v. Williams*, 474 U.S. 327, 329-30 (1986)). The Second

---

[4] Green Haven's superintendent appears to be the only defendant who might conceivably be charged with personal involvement with Plaintiff's access to religious services (because the other defendants are the Director of a separate facility (CNYPC), Green Haven medical personnel, and the DOCCS Acting Commissioner and Deputy Commissioner).

Circuit, joining the majority of courts of appeals that have considered the state-of-mind requirement for a free exercise claim, has held that a defendant's "isolated acts of negligence" causing an unintended denial of religious rights do not violate the Free Exercise Clause.[5] *Id.* at 998. By contrast, "[a]lthough mere negligence cannot support a First Amendment free exercise claim,  . . . deliberate indifference 'clearly suffices.'" *Id.* Deliberate indifference arises when an actor is "culpabl[y] reckless[ ]," or when an official's "act or . . . failure to act" reveals "a conscious disregard of a substantial risk of serious harm." *Id.* (citing *Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019)). Repeated acts of apparent negligence may indicate deliberate indifference. *Id.* Here, Plaintiff's general allegations that mismanagement and disarray resulted in the failure to escort him to religious services on Easter (and possibly other occasions) are insufficient to allege that any defendant prohibited the free exercise of Plaintiff's religion.

The Court grants Plaintiff leave to amend his complaint to replead a claim for a deprivation of rights under the First Amendment's Free Exercise Clause. For Plaintiff's benefit, the Court notes that, when analyzing such a claim, "a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice [furthers ]. . . legitimate penological objective[s]." *Kravitz v. Purcell*, 87 F.4th 111, 128 (2d Cir. 2023) (citing *Farid v. Smith*, 850 F.2d 917, 926 (2d

---

[5] In *Wiggins*, the Second Circuit cited the following circuit decisions with approval: *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ("We . . . hold that negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause."); *Eason v. Thaler*, 73 F.3d 1322, 1327 n.2 (5th Cir. 1996) (concluding that a prison official's negligent act of designating the wrong religion on a travel card could not amount to a First Amendment violation); *Mbonyunkiza v. Beasley*, 956 F.3d 1048, 1055 (8th Cir. 2020) ("[E]vidence that a correction official negligently failed to comply with an inmate's sincerely held religious dietary beliefs does not establish a Free Exercise Clause claim under § 1983."); *Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009).

Cir. 1988)). So long as a restriction on an inmate's religious practice "is reasonably related to legitimate penological interests," that restriction does not violate the First Amendment. *Turner v. Safely*, 482 U.S. 78, 89 (1987).

**D.    Deliberate Indifference to Medical Needs**

Plaintiff alleges that Defendants violated his right to constitutionally adequate medical care. To establish a Section 1983 claim for inadequate medical care in violation of the Eighth Amendment, a plaintiff must show that correction officials were deliberately indifferent to the plaintiff's serious medical condition. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Deliberate indifference is evaluated under a two-pronged test comprised of both objective and subjective components. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

The objective component of this standard requires that the alleged medical need be a "sufficiently serious" condition that "could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). The medical condition must be of such "urgency . . . that [it] may produce death, degeneration, or extreme pain." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019).[6]

The subjective component requires a prisoner to show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving him of adequate medical treatment.

---

[6] Courts have found unconstitutional deliberate indifference, for example, when officials "ignored a 'life-threatening and fast degenerating' condition for three days; or delayed major surgery for over two years." *Sims v. City of New York*, 19-198-pr (2d Cir. Dec. 17, 2019) (quoting *Demata v. N.Y. State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (unpublished table decision); *see also Hathaway v. Coughlin*, 841 F.2d 48, 50-51 (2d Cir. 1988) (officials delayed arranging corrective hip surgery for over two years); *Archer v. Dutcher*, 733 F.2d 14, 16-17 (2d Cir. 1984) (officials deliberately delayed care as form of punishment for violations of discipline code or other invalid reasons).

*Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (citing *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)). A convicted prisoner must show that a prison official "kn[ew] of and disregard[ed] an excessive risk to [the prisoner's] health or safety; the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must [have] also draw[n] the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). That is, a prisoner must state facts showing that the defendant possessed "a state of mind that is the equivalent of criminal recklessness." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

Allegations that a medical professional inadvertently or negligently failed to provide adequate care do not state a Section 1983 claim for a violation of the Eighth Amendment. *See Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in . . . treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Thus, a "mere disagreement over the proper treatment" is not a cognizable violation of the Constitution. *See Chance*, 143 F.3d at 703; *see also Hill*, 657 F.3d at 123 (holding that a medical officer who prescribed Motrin rather than stronger pain medication to treat a broken wrist did not have the "culpable state of mind" required to satisfy the subjective component of the deliberate indifference standard).

1.    Delay in "mental health" medications

It is well established that psychiatric injuries may present serious medical needs. *See Cuoco v. Moritsugu*, 222 F.3d 99, 106-07 (2d Cir. 2000); *Clark v. Quiros*, 693 F. Supp. 3d 254, 289 (D. Conn. 2023) (plaintiff's allegations, including a "multi-year delay in a referral to a mental health provider," sufficed to show serious injury). Where a claim is based on a temporary delay or interruption in treatment, the inquiry about the seriousness of the medical need "can

properly take into account the severity of the temporary deprivation alleged by the prisoner."

*Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003). In other words, it is the "particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Id.* (holding that district court properly focused on the 5-day delay in obtaining HIV medication, rather than HIV status alone); *Salahuddin*, 467 F.3d at 280 (seriousness inquiry is focused on the alleged inadequacy).

a.    Nurse Jane Doe's response to panic attack

Plaintiff alleges that, late on Saturday night, November 11, 2023, he woke up with "labored breathing and feelings of suffocation." (ECF 1 at 13.) Nurse "Jane Doe" stated that he should "hang in there" until Monday because she was by herself and no doctors were available for medical or mental health treatment. (*Id.*) She also opined that Plaintiff's allergies likely caused the delay in his receiving mental health medication and a sleep aid upon his transfer to Green Haven.

Plaintiff has not alleged facts about the medication or suggested that delay in receiving it put him at risk of "death, degeneration, or extreme pain." *Charles*, 925 F.3d at 86. Nurse Jane Doe's determination that no mental health treatment was available until Monday (a period of less than 48 hours) thus does not appear to have posed an objectively serious risk of harm to Plaintiff. *See*, *e.g.*, *Hamm v. Hatcher*, No. 05-CV-0503 (ER), 2013 WL 71770, at *9 (S.D.N.Y. Jan. 7, 2013) (granting defendants summary judgment where plaintiff's access to psychiatric medication was interrupted for ten days and he complained of "exacerbated depression, nightmares, hopelessness, and suicidal thoughts" because, "[e]ven assuming that Plaintiff's averments were

substantiated by admissible evidence," his allegations were "insufficient to show that he was subjected to a significant risk of serious harm").

Even if Plaintiff's allegations were sufficient to suggest that Nurse Jane Doe subjected him to a significant risk of harm by failing to obtain treatment more promptly, he has not alleged facts that could give rise to an inference that Nurse Jane Doe had a sufficiently culpable state of mind, *i.e.*, that she was subjectively aware of an objectively serious risk of imminent harm and disregarded it. These allegations thus fail to state a Section 1983 claim on which relief can be granted.

        b.     Delay in psychiatric medication

Plaintiff brings this claim—that it took three weeks from the date of his October 31, 2023 transfer to Green Haven, for him to receive mental health medication— against (1) OMH Unit Chief Gleason; (2) CNYPC Executive Director Danielle Dill; (3) Nurse Administrator Mullaly, and (4) DOCCS Deputy Commissioner Carol Moores, M.D. Plaintiff alleges that, on unspecified dates, he sent letters or appeals to these defendants (directed to the attention of "Medical Director" or "Nurse Administrator," because he did not know the names for these individuals); thereafter, on or about November 21, 2023, Plaintiff received his mental health medication and sleep aid.

Some of the named defendants seem to have indicated that they did not have oversight of the matters that Plaintiff was bringing to their attention (the availability of Plaintiff's medication at Green Haven). Plaintiff alleges, for example, that the CNYPC Director responded to his letter with a reply that "points the blame to DOCCS" and referred Plaintiff to DOCCS Medical Director Dr. Carole Moores. (ECF 1 at 14.) Dr. Moores referred Plaintiff back to his medical provider at Green Haven. (*Id.* at 14.)  It is thus unclear from the facts alleged that the named

defendants were "responsible for, the medical treatment that plaintiff did or did not receive on a daily basis," *Cox v. (DOCCS) NYS Dep't of Corr.*, 673 F. Supp. 3d 174, 191 (N.D.N.Y. 2023), such that they could be personally liable for damages for the delay. *Suarez v. Keiser*, No. 04–CV–6362, 2006 WL 543725, at *6 (W.D.N.Y. March 3, 2006) (holding that "a letter to a supervisory official with no authority to remedy the situation probably would not" constitute the necessary showing of personal involvement).

Moreover, correspondence between a plaintiff and a supervisory official is generally insufficient to show the official's personal involvement for Section 1983 liability for damages. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *Bonie v. Annucci*, No. 20-CV-640 (KMK), 2023 WL 2711349, at *6 (S.D.N.Y. Mar. 30, 2023) ("The receipt of letters or grievances, by itself, does not amount to personal involvement."); *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability." (italics, quotation marks, and citation omitted)).

Thus, in the absence of any specific allegation establishing the personal involvement of these defendants in delaying plaintiff's receipt of his mental health medication and sleep aid, Plaintiff's allegations do not state a constitutional claim against them for damages.

2.    Denial of muscle relaxer and ear treatment

Plaintiff alleges that Dr. Akhter denied him medication at Green Haven that he had received at Clinton. Specifically, he was denied Naproxen, a muscle relaxer that he had received for "spasms" from a sports injury. (ECF 1 at 15.) Dr. Akhter also "begrudgingly" gave Plaintiff a nasal spray that he "demanded" after being "dumbstruck" when Dr. Akhter suggested that he use a saltwater rinse instead. (*Id.*) Dr. Akhter "took a quick look at Plaintiff's ears" and stated that

there was wax but no infection. At Clinton, an ear flush was performed "within 48 hours of complaint," but Dr. Akhter stated that he did not "have access" to such equipment.

Subsequent to that appointment, Plaintiff has had "swelling around the ear" and "advanced hearing impairment." (*Id.*) Plaintiff filed grievances and sent letters to DOCCS Acting Commissioner and DOCCS Deputy Commissioner Carol Moores, M.D., but he was merely referred "back to [the] same health care staff he [wa]s complaining about." (*Id.* at 16.)

These allegations are insufficient to state a Section 1983 claim against DOCCS Acting Commissioner Martuscello, Deputy Commissioner Moores, or Dr. Akhter for deliberate indifference to Plaintiff's serious medical needs. The fact that the treatment that Plaintiff received in 2023 at Green Haven differed from treatment that he had received in the past at Clinton appears to be the type of disagreement over proper treatment that cannot be the basis for a Section 1983 damages claim. *See, e.g., Reyes v. Gardener*, 93 F. App'x 283, 284 (2d Cir. 2004) (holding that alternative medical plan incorporating weaker pain medication to treat inmate was "mere disagreement over the proper treatment") (internal quotation marks omitted); *Rush v. Fischer*, No. 09–CV–9918, 2011 WL 6747392, at *3 (S.D.N.Y. Dec.23, 2011) ("The decision to prescribe one form of pain medication in place of another does not constitute deliberate indifference to a prisoner's serious medical needs."). Plaintiff's allegations about the denial of Naproxen and an ear flush thus fail to state a Section 1983 claim for deliberate indifference to serious medical needs.

If Plaintiff repleads these claims, he must include facts plausibly suggesting that each named defendant was subjectively aware of a serious risk of harm to Plaintiff and acted with a sufficiently culpable state of mind.

17

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill*, 657 F.3d at 123-24; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

Some of Plaintiff's allegations – such as his allegations that he did not receive his lasagna meal and packs of nuts – fail to state a claim under Section 1983 and likely cannot be cured with better pleading, As to other claims, Plaintiff may be able to allege additional facts sufficient to state a claim under the standards set forth herein. Accordingly, the Court grants Plaintiff sixty days' leave to amend his complaint to replead these claims.

New or different claims that do not arise from the facts asserted in the original complaint must not be included in the amended complaint and must be brought in a separate action.

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights; how, when, and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## LEGAL ASSISTANCE

The City Bar Justice Center operates the SDNY Federal Pro Se Legal Assistance Project to assist self-represented parties with civil cases in this district. Appointments can be scheduled by phone (212-382-4794), email (fedprosdny@nycbar.org), or by completing the City Bar Justice Center's intake form. A flyer and retainer agreement are attached.

The City Bar Justice Center is a private organization, and the SDNY Federal Pro Se Legal Assistance Project cannot accept filings on behalf of the court. Pro se litigants must file documents with the court through the Pro Se Intake Unit, either by mail, in person, or by email to pro_se_filing@nysd.uscourts.gov.

## CONCLUSION

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 24-CV-5029 (LTS). An Amended Civil Rights Complaint form is attached to this order.

No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the Court will dismiss Plaintiff's federal

claims for failure to state a claim upon which relief may be granted and decline, under 28 U.S.C.

§ 1367(c), to exercise supplemental jurisdiction of Plaintiff's state law claims.

       The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would

not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an

appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant

demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

  Dated:    October 21, 2024
              New York, New York

                          /s/ Laura Taylor Swain
                          LAURA TAYLOR SWAIN
                          Chief United States District Judge

# FEDERAL PRO SE LEGAL ASSISTANCE PROJECT
in the Southern District of New York (SDNY)



## ABOUT THE PROJECT

The Federal Pro Se Legal Assistance Project provides limited assistance to self-represented litigants (plaintiffs and defendants) with cases involving civil legal matters in the United States District Court for the Southern District of New York (SDNY).

This project assists plaintiffs and defendants on a variety of federal legal issues, including, among others, civil rights, employment discrimination, and disability discrimination. The team also assists incarcerated individuals with civil (non-criminal) claims.

## HOW WE HELP

Fed Pro provides limited assistance through full-time attorneys, legal support team members, pro bono (volunteer) attorneys, law school/college interns, and a social work team. **While we cannot provide full representation,** Fed Pro can assist litigants by providing limited-scope services such as:

 **Counseling** about potential federal claims prior to filing suit

 **Interpreting and explaining** federal law and procedure

 **Reviewing drafted pleadings** and correspondence with the Court

 Consulting on **discovery** matters

 Assisting with the **settlement** process (including mediation)

## HOW TO ACCESS OUR SERVICES



For assistance, please complete the **online form** located on our website, https://www.citybarjusticecenter.org/projects/federal-pro-se-legal-assistance-project/.

If you are not able to complete the form, or you have questions about the form, please **call (212) 382-4794.** Please leave a message and wait for us to call you back.



**CITY BAR JUSTICE CENTER**

SDNY Federal Pro Se Legal Assistance Project

## <u>LIMITED SCOPE LEGAL ASSISTANCE RETAINER AGREEMENT</u>

This agreement explains the terms of the limited legal assistance that the City Bar Justice Center ("CBJC") has agreed to perform for you through its Federal Pro Se Legal Assistance Projects ("Projects"). Writing your name at the end demonstrates your agreement to the terms herein.

### I.    LIMITS OF ASSISTANCE

The Projects agree to provide only limited scope legal assistance in connection with your matter. This means that:

- You remain a self-represented (pro se) litigant and are responsible for all aspects of your case. CBJC is not your attorney of record in this matter. In the event that you are or become a party to a case in the Eastern District of New York or the Southern District of New York or any other forum, CBJC will not enter an appearance or otherwise act on your behalf without expressly agreeing to do so and entering into a separate signed agreement with you. CBJC has no obligation to enter into any such agreement.

- CBJC has sole discretion to determine the specific type of services provided. These services may include providing advice and counsel about your case, explaining court orders and procedures, reviewing and commenting on your drafts, assisting with drafting, and discussing strategy.

- This retainer covers this consultation only. CBJC can stop assisting you with this matter at any time for any reason consistent with the New York Rules of Professional Conduct.

- CBJC has not agreed to represent or assist you on any other matter in the future. If CBJC does agree to any representation on another matter, then a separate signed retainer agreement will be necessary.

- You may request but are not guaranteed subsequent appointments. CBJC will only provide assistance on subsequent appointments if it provides you with confirmation to you of such assistance, via email or otherwise, with such additional assistance governed by the terms of this agreement, including that the assistance is for that consultation only and that CBJC has sole discretion to decide whether it will provide any additional future consultations.

- You are responsible for and must meet all deadlines in your case, regardless of whether you are able to have an appointment at the Projects in the Eastern District or the Southern District.

## II.    FREE ASSISTANCE, NON-ATTORNEY PROVIDERS, AND COMPETENCY

CBJC does not charge for this assistance. You may be assisted by law students and/or paralegals under the supervision of an attorney consistent with the Rules of Professional Responsibility. CBJC's assistance does not guarantee success or any particular outcome but that CBJC will provide competent assistance.

## III.    TERMINATION OF ASSISTANCE

Your participation is entirely voluntary, and you are free to stop receiving CBJC's limited scope assistance at any time. CBJC may stop providing limited assistance at its sole discretion consistent with the New York Rules of Professional Conduct. If CBJC chooses to stop providing limited assistance, it will provide notice by email, mail, or phone.

## IV.    COSTS OF LITIGATION

Filing a lawsuit or defending against a case when you are sued can involve costs. You are responsible for all costs, including filing fees. The CBJC will not pay for any costs associated with your case. The Court may allow you to proceed without paying filing fees (this is called "proceeding in *forma pauperis*"). Whether you are allowed to proceed in *forma pauperis* is entirely up to the Court.

## V.    CONFIDENTIALITY

CBJC will take all reasonable steps to maintain any information you provide as confidential.

## VI.    REVIEW AND CONSENT

If you have questions or concerns, please leave a voicemail for the Project at (212) 382-4794, and someone will call you back to discuss this agreement.

By signing and writing today's date below, you indicate that you: have had an opportunity to discuss this agreement with CBJC or another Attorney of your choice; have read and understand this agreement; consent to the terms of this agreement; and understand the possible risks and benefits of proceeding with limited scope assistance.

_____          _____

Signature                                                                                    Date


**Please mail these completed forms to the City Bar Justice Center, Pro Se Legal Assistance Project, 40 Foley Square, LL22, New York, NY 10007.**

 **CITY BAR JUSTICE CENTER**

SDNY Federal Pro Se Legal Assistance Project

Name: _____ Date of Birth: _____

Facility: _____ Identification #_____

**How did you hear about our clinic? (circle one)**

Pro Se Intake Office          Website                    Conference/Hearing with the Judge

Pro Se Information Package    Friend/Family              Order/Letter from the Judge

Other: _____

**Do you already have an open case with the federal court? (circle one)**     Yes     No

**If yes, what is your case number?** _____

**If yes, which courthouse is it in? (circle one)**        Manhattan          White Plains

**Ethnicity? (circle one)**

Asian/Pacific Islander       Hispanic                    Caucasian

Black                        Middle Eastern              Decline to answer

African                      Caribbean                   Other:_____

Native American              South Asian

**Gender?** _____

**Education level? (circle one)**

8th grade or less            GED                         2-4 years of college/vocational school

Some high school             College graduate            Decline to answer

High school graduate         Graduate degree

**Please mail these completed forms to the City Bar Justice Center, Pro Se Legal Assistance Project, 40 Foley Square, LL22, New York, NY 10007.**



**CITY BAR JUSTICE CENTER**

SDNY Federal Pro Se Legal Assistance Project

**Immigration status? (circle one)**

U.S. citizen (born in U.S.)          Naturalized U.S. citizen          Legal Permanent Resident

                                    (Born in:_____)

No lawful status                    Decline to answer                 Other:_____

**Marital status? (circle one)**

Single                                        Married

Divorced                                      Separated

Widowed                                       Decline to answer

**Do you have a disability? (circle all that apply)**

No                      Mental health                 Vision

Hearing                 Mobility                      Memory

Homebound               Decline to answer             Other:_____

**What is your primary language?** _____

**LGBTQ+? (circle one)**          Yes          No          Decline to answer

**Veteran?** _____

**Please mail these completed forms to the City Bar Justice Center, Pro Se Legal Assistance Project, 40 Foley Square, LL22, New York, NY 10007.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____

(Include case number if one has been assigned)

### AMENDED
## COMPLAINT
(Prisoner)

Do you want a jury trial?
□ Yes    □ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

Rev. 5/20/16

## I.     LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.     PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name                     Middle Initial            Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                              State                    Zip Code

## III.     PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name                      Last Name                           Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                               State                     Zip Code

Defendant 2:

First Name                      Last Name                           Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                               State                     Zip Code

Defendant 3:

First Name                      Last Name                           Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                               State                     Zip Code

Defendant 4:

First Name                      Last Name                           Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                               State                     Zip Code

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.    PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____